**FAULKNER et al. v. REED. (No. 308–3633.)**

(Commission of Appeals of Texas, Section B. May 31, 1922.)

1. **Executors and administrators ⟨key⟩3(5)—Evidence held insufficient to show no necessity for administration so as to give district court jurisdiction of suit against deceased debtor's heirs.**

In an action for breach of contracts by a nonresident, on whose death his administrator, appointed in a foreign state, and his heirs, were made defendants, evidence *held* to show that the estate was not closed when the case was tried and that plaintiff's claim was not the only outstanding indebtedness so as to render an administration in this state unnecessary and give the district court jurisdiction.

2. **Descent and distribution ⟨key⟩147—Burden is on one suing deceased debtor's heirs to show no administration pending in state.**

In an action for breach of contracts by a nonresident on whose death, his administrator, appointed by a foreign court, and his heirs, were made defendants, the burden was on plaintiff to prove that there was no administration pending in this state.

3. **Descent and distribution ⟨key⟩147—Executors and administrators ⟨key⟩3(5)—Evidence held insufficient to show no pending administration or that claim sued on was only one against estate so as to render administration unnecessary.**

In an action for breach of contracts by a nonresident, on whose death his administrator, appointed by a foreign court, and his heirs, were made defendants, evidence *held* insufficient to show there was no pending administration in this state and that plaintiffs' claim was the only one against the estate herein when the case was tried, so as to render a domestic administration unnecessary and give the district court jurisdiction.

4. **Courts ⟨key⟩472(4)—Decedent's creditor cannot collect debt by suit in district court prior to expiration of time to start administration.**

Where a deceased debtor's estate, consisting of realty in a foreign state as well as in this state, was in the custody of a foreign administrator, unsatisfied claims were still pending against it, the value of the land in such foreign state was uncertain, and deceased's widow and child were entitled to rights therein, a creditor in this state could not collect his debt by a suit in the district court against such heirs, even if no administration was pending in this state, where, when the case was tried,

deceased had been dead less than two years, so that there still remained over two years in which to start an administration or appoint an ancillary administrator; the probate court alone having authority to administer the estate, pay its debts, and look after the rights of the widow and child.

**5. Judgment ⊙�➞12—No judgment against estate without legal representative before court.**

No judgment can be rendered against a decedent's estate, unless it has a legal representative before the court.

**6. Executors and administrators ⊙�➞525—Administrator cannot sue or be sued in courts of another state.**

A foreign administrator, being the agent solely of the court appointing him and authorized to administer only such assets as are within its jurisdiction, cannot sue or be sued in the courts of this state, or act as legal representative of the estate herein.

**7. Executors and administrators ⊙�➞518(1)—Estate of nonresident decedent must be administered through administrator appointed in this state.**

A valid administration of the estate of a nonresident in this state must be through an administrator appointed herein, at the instance of a creditor or on the suggestion of a foreign administrator.

**8. Appeal and error ⊙�➞1176(6) — Action against debtor's heirs will not be dismissed because of failure to show administration of estate unnecessary, where right to assert claim in other ways would be cut off.**

An action in the district court for breach of contracts by a nonresident on whose death his administrator, appointed in a foreign state, and heirs, were made defendants, will not be dismissed nearly five years after the alleged breach because of the district court's want of jurisdiction by reason of plaintiff's failure to show that an administration in this state was unnecessary as to do so would be to render a final judgment for defendants and thus cut off plaintiff's right to assert his claim in other ways, or in this, if the district court subsequently acquired jurisdiction.

**9. Appeal and error ⊙�➞1175(1)—Supreme Court will remand, rather than render final judgment, when justice wil be better subserved.**

The Supreme Court will remand, rather than render final judgment, when justice will probably be better subserved by so doing.

.Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by E. B. Reed against B. M. Faulkner, on whose death E. R. Faulkner, as his administrator and heir, and his widow, were made parties defendant. From a judgment reversing a judgment for plaintiff in part and rendering a modified judgment for plaintiff (229 S. W. 945), defendants bring error. Reversed and remanded.

Taylor, Forrester & Stanford, of Waco, for plaintiffs in error.

Johnston & Hughes, of Waco, for defendant in error.

POWELL, J. For a partial statement of the nature and result of this case, we quote as follows from the opinion of the Court of Civil Appeals:

"This suit was instituted by appellee, E. B. Reed on January 30, 1918, against B. M. Faulkner, alleged to be a nonresident of the state and a transient person, and an attachment was sued out and levied on 54.1 acres of land in Coleman county, Tex. After the filing of the suit, on May 24, 1918, B. M. Faulkner died, and E. R. Faulkner, as administrator in Ohio, of the estate of B. M. Faulkner, deceased, and E. R. Faulkner as an heir, and Mary M. Faulkner as an heir and surviving widow, were made parties defendant. The suit was for damages for breach of four contracts, alleged to have been executed by B. M. Faulkner during his life time, to jointly engage in the show business. Laura Nyman and her husband were also made parties defendant in order that a conveyance of the land made to her by E. R. Faulkner and Mary M. Faulkner might be set aside. All of the named parties, including Bascom M. Faulkner, up to the time of his death, were residents of the state of Ohio at the institution of the suit, and have continuously resided in Ohio up to and including the date of the trial. Bascom M. Faulkner appeared personally in this case before his death and made defense. He died during the pendency of this suit, and after his death E. R. Faulkner, as his administrator who administered his estate in the state of Ohio, and Mary M. Faulkner surviving wife, the only heirs of said deceased, appeared in this case, and both filed pleadings, as did Laura Nyman and C. W. Nyman, her husband.

"E. R. Faulkner appeared and filed an amended answer, in which he undertook to limit his appearance, saying he only appeared for the purpose of quashing the nonresident notice served on him; but it contains a full answer, subject to his motion to quash service, and closes with a general denial.

"Mary M. Faulkner, the surviving widow, appears and 'makes as her own answer the general demurrer, the special exceptions, and the general denial filed by her codefendant, E. R. Faulkner,' etc. Likewise, Laura Nyman appeared and filed answer.

"The case was tried by the court with a jury upon special issues, and upon the answers the court entered judgment in favor of appellee against the estate of Bascom M. Faulkner, deceased, E. R. Faulkner, administrator, for $6,250, with 6 per cent. interest from January 1, 1918, and personal judgment against E. R. Faulkner and Mary M. Faulkner, heirs of Bascom M. Faulkner, deceased, jointly and in rem for the purpose of foreclosing an alleged creditor's lien on the 54.1 acres belonging to Bascom M. Faulkner at the date of his death, and canceling a conveyance of the same made to Laura Nyman, and ordering sale of said land in satisfaction of said debt. The judgment was

made a severable one; that is, $3,125 of the total amount against E. R. Faulkner and Mary M. Faulkner each, as heirs, provided that, if the land did not sell for a sufficient amount to pay off the total, the deficiency should be made out of said two defendants, and the excess, if any after the sale, was directed to be paid over to said named defendants in equal proportions."

The attachment issued and levied on the tract of land in Coleman county, Tex., at the beginning of the litigation, was quashed shortly thereafter.

The case was appealed by the Faulkners to the Court of Civil Appeals at Austin, whence it was transferred to the Court of Civil Appeals at San Antonio, where it was decided. That court reversed the judgment of the district court in so far as it was a personal judgment against the heirs of B. M. Faulkner, deceased, and then proceeded to render judgment:

"That appellee, E. B. Reed, recover of appellants, E. R. Faulkner and Mary M. Faulkner in rem, and not personally, the sum of $6,250 with 6 per cent. interest from the 2d day of January, 1920, and that the creditors' lien held by appellee be foreclosed on the 54.1 acres of land as against E. R. Faulkner and Mary M. Faulkner, and that all costs of this appeal be assessed against E. B. Reed, and costs of the lower court against E. R. Faulkner and Mary M. Faulkner." See 229 S. W. 945.

The Faulkners then made application to the Supreme Court for writ of error and same was granted. The cause is now before us for review and recommendation.

The controlling question upon this appeal is whether or not the district court of McLennan county had jurisdiction of this case, which was an effort of a creditor to collect from a deceased debtor, within four years after the latter's death, by suing his heirs instead of taking out an administration in the county court as the law provides. Plaintiffs in error here, defendants in the trial court, urged in every way the lack of jurisdiction of the district court, and this contention constitutes the burden of their application for writ of error. By their first assignment they contend that the Court of Civil Appeals erred in its judgment because in effect it held:

"That a creditor may maintain a suit in the district courts of this state against heirs for the obligation of the ancestor, without alleging and proving the exceptional facts that bring his case within the exception to the general rule requiring an administration."

The Supreme Court granted the writ of error upon the assignment just quoted.

Realizing that the prosecution of this suit in the district court against the heirs of B. M. Faulkner, after his death, was entirely unusual and could not be justified except upon certain conditions of fact showing no necessity for an administration, the attorneys for Reed pleaded said facts as follows:

First. "That since the filing of this suit and the suing out of said writ of attachment and the levy thereof, the defendant Bascom M. Faulkner has died, and the defendant E. R. Faulkner was appointed administrator in the state of Ohio, but there has been no letters of administration taken out in the state of Texas; that the property hereinbefore described is the only property belonging to defendant situate within the state of Texas, and said property was not included in the inventory of said administrator in the administration in Ohio; that plaintiff's claim is an unliquidated claim against the estate of said deceased defendant, and was outstanding at the time of his death; that there are no other creditors of said deceased within the state of Texas, and plaintiff had at the time of the death of said Bascom M. Faulkner, and still has, a valid and subsisting creditor's lien against the property hereinbefore described."

Second. "That the 54.1 acres of land in Coleman county, Tex., hereinbefore described, at the time of the purported deed to Laura Nyman was of the aggregate value of $5,000; and all of said property was appropriated by said heirs jointly without subjecting it to administration, and said administration had been closed, and each heir received in value more than $15,000 worth of property from said estate.

"That there are no other debts against the estate of Bascom M. Faulkner, deceased."

Counsel for Faulkner entered a general denial of above allegations.

When the evidence was all in, counsel for defendants in the trial court asked for a peremptory instruction which was refused. The court did not submit to the jury any issues of fact involved in aforesaid allegations by Reed in which he attempted to show that there was no necessity for an administration upon this estate in Texas. But, in writing up its judgment, the trial court held that—

"There were no other creditors of said estate and no necessity for an administration of said estate in Texas."

[1] Counsel for Faulkner vigorously insist that there is no evidence in the record establishing aforesaid allegations. After a most careful survey of the record, we think this contention is sound and must be sustained. First, we refer to the status of the administration in Ohio at the time of the trial of the case at bar. About one week after his father's death, which occurred in Arkansas, E. R. Faulkner took out letters of administration in Ohio in his father's estate and qualified by giving the usual bond. The estate consisted of real estate, together with personal property of about the value of $1,000. Attorneys for Reed took the ex parte depositions of this foreign administrator in August, 1919, and he testified that he had already paid about $1,800 on the debts of his father and that the latter's estate still

owed some $5,000. There is absolutely no evidence in the record showing that this indebtedness had been paid at the time of the trial of the instant case. So, the claim of Reed in the state of Texas was not the only outstanding indebtedness of this estate at that time.

A complete transcript of the Ohio probate court orders is in the record. It shows that certain reports were required of the administrator as to the personal property as well as a report whenever he collected proceeds of the sale of any of the realty belonging to the estate made for the purpose of paying its obligations. It does not appear anywhere in the record that any of the real estate was sold except the tract in Coleman county, Tex. This was conveyed by all the heirs to the mother-in-law of E. R. Faulkner for the sum of about $2,700, evidenced by a demand note. The deed was made in January, 1919, some seven months before the administrator gave his deposition and swore that the estate still owed $5,000. Therefore the sale of said property cannot even be circumstantial evidence of the fact that all the debts had been provided for when this deed was made. He testified that the court told him to sell this land to any one he selected, but there is nothing in the transcript showing that he was to be entirely independent of the probate court in making that sale. On the contrary, the record shows that he was likely waiting to report the sale until he had collected this note taken in payment of the land.

The record shows beyond any dispute that the estate in Ohio was not closed in any sense when the instant case was tried, and the Court of Civil Appeals correctly conceded that much in its discussion of the facts. As a matter of fact, the administrator had not even filed his inventory. He explained that his lawyer advised him to delay doing so until this damage suit in Texas had been decided.

It is true that early in December, 1919, he filed an account showing certain of his transactions since he qualified as administrator. This account shows that he and his mother advanced $627.28 to help pay certain debts owing by the estate. He showed that this amount was used by him in the payment of certain obligations of the estate which he listed in this report. In closing up this account, he says there is no personal property, and he had therefore settled with his mother under the matter of her year's allowance. There is nothing before us showing that even this account was approved by the probate court. That it did not pretend to be a final account, as we understand that term, is too clear for argument. The undisputed evidence shows that he had paid out $1,800 on his father's debts prior to August, 1919, so this account did not even report all of those payments. This ac-

count was evidently made for the purpose of obtaining credit against the estate for this cash which he and his mother had advanced for the payment of that portion of its debts. Evidently they intended to finally pay the debts of the estate as they could, from time to time, sell off the real estate belonging thereto.

Attorneys for Reed seem to insist that the mere filing of this account, showing disposition of some $600, showed that the estate was wound up and the administration closed. Of course, we cannot agree with this contention. There is no listing of assets and liabilities and not even any prayer for discharge.

There is absolutely no evidence that the heirs had divided up the property among themselves. The whole record shows that, at the time of the trial of this case, the administration in Ohio was in full swing, and the property at that time in the hands of the administrator appointed by that court.

[2, 3] We come now to the status of the estate in Texas. Reed alleged that there was no administration pending in Texas. His counsel say that the only property belonging to the estate in Texas was the tract of land in Coleman county; therefore, we would naturally look there for the pendency of a Texas administration. Was there any administration pending there? The burden of proof was upon Reed to show that no such administration was pending. His counsel could have done so by direct testimony with very little trouble. The deposition of the clerk of the court would have availed. He brings us no direct testimony, but says he thinks two circumstances show that no such administration was pending. In the first place, they say that the probate records in Ohio show that the Texas attorneys, representing the Ohio administrator in the case at bar, asked their client to pay them from Ohio, when, had there been a Texas administrator, it is probable these attorneys would have asked the Texas administrator to pay their fee. We realize that lawyers frequently are compelled to collect their fees wherever they can get the money. But we submit that the natural course is to begin the efforts at collection by going direct to your client for your pay. Consequently the action of these Texas attorneys in collecting their fee as they did certainly does not tend in any way to prove that there was no administration pending in Texas.

But, in the second place, counsel urge that if there had been an administration in Coleman county, Tex., it is likely that it would have shown in the abstract of title to the Coleman county tract of land; that, if it had so shown, Mrs. Nyman, as a careful investor, would not have accepted the deed to the property; that it was passed on by her attorneys; that if there had been any necessity for an administration in Texas in or-

der to perfect the title, Mrs. Nyman would have required an ancillary administration there. Thus, we have an effort to build one presumption upon another, and all based upon remote circumstances and probabilities. The fact is that Mrs. Nyman said she had no Texas attorneys pass upon this title. It is not shown what the abstract disclosed. But, above all, it is remarkably strange to us that counsel should ask us to impute to her the exercise of the very best and most careful business judgment in closing up this trade, just as if it was a bona fide transaction, when those same attorneys pleaded and the jury found that the transaction between Mrs. Nyman and the Faulkners involving a sale of this land was a makeshift and a fraud, conceived for the sole purpose of defeating the claim by Reed.

The above circumstances cannot serve to show that there was no administration pending in Texas when this case was tried in the district court.

Reed further alleged that there were no other Texas creditors of the estate. It seems to us that this also was easily susceptible of direct proof. At least, the Ohio administrator, who gave ex parte depositions at the instance of Reed, could have been asked whether or not, from his father's records, it appeared that he owed any debts in Texas. The witness showed complete fairness and entire willingness in making his answers, so far as the record discloses. Counsel does not give us the benefit of such definite evidence upon this point, but asks us to rely upon circumstances, such as the following:

In the first place, it is contended that if there had been any unsatisfied debts in Texas, the Ohio administrator would not have told Mrs. Nyman that the Texas land was free from incumbrance. But he did do so in face of the fact that the Reed claim was being pressed. If he ignored the Reed claim in saying the land was unincumbered, it is but natural to presume he would have ignored any other debts. Aside from this, we will say, since it is all a matter of conjecture, that we think he intended to tell Mrs. Nyman that there was no mortgage or vendor's lien on the land. In the ordinary course of discussing land titles, that is what laymen mean when they make such statements.

In the second place, counsel say there probably were no other Texas debts because the Ohio administrator testified that he was awaiting the result of this Reed suit before filing his inventory and closing up the administration; that if there were other debts, he would have to await the result of those also. This circumstance is very remote. It would be just as logical and consistent to argue that the Reed claim was the only one he was contesting and that the others were already ready for the final report.

It will be seen that we are asked to find from pure conjecture based upon remote circumstances and probabilities, that there was no administration in Texas and no Texas creditors of this estate except Reed. We cannot do that. The law is not given to determining people's rights upon the basis of mere conjecture and surmise. We think counsel for plaintiffs in error correct in stating that the record contains no evidence that there was no pending administration in Texas when the case was tried and no evidence showing that the Reed claim was the only one in Texas against the estate at that time.

[4] But whether we be correct in our view of the above facts or not, the undisputed evidence shows that the estate, including all of its Ohio assets, was in the custody of the Ohio administrator, being administered by the court there; that unsatisfied claims amounting to some $5,000 were still pending against the estate; that the estate consisted of a home in a small city and about 80 acres of land elsewhere in Ohio, as well as the small tract in Texas; that there was no definite evidence in the record of the value of the Ohio land, as shown by the answer of the jury that they did not know what it was worth; that the widow and child were entitled to certain rights in the estate.

In view of this state of the record, we submit that Reed entirely failed to show such a state of facts as would authorize him to collect his debt by a suit in the district court as against these heirs. When this case was tried, the original defendant had been dead only about one year and eight months. For that reason, even if it had been shown that no administration was then pending in Texas, there still remained over two years in which any of the creditors could start an administration on the estate in Texas. If they did not do so, the Ohio administrator might have had an ancillary administrator appointed there. If a creditor wants to avoid an administration upon the estate of his deceased debtor and push his claim before the latter has been dead four years, he must show that his is the only claim against the estate. In that event, if he gets all the heirs in court, there is clearly no need of an administration. But such was not the state of the case at bar. The district judge should not have proceeded at that time with this case against these heirs then before the court. The probate court alone has authority to administer an estate, collect its assets, pay its debts with due deference to their priority, and look after the rights of the widow and children of a decedent. If there was ever any necessity for an administration of an estate, such a case is the one at bar as we see it.

We think all of the authorities sustain our view that, when this case was tried, the district court was without jurisdiction to award a judgment in favor of Reed against.

these heirs. We cite the following: Ansley v. Baker, 14 Tex. 607, 65 Am. Dec. 136; McMiller v. Butler, 20 Tex. 403; Green v. Rugely, 23 Tex. 539; Webster v. Willis, 56 Tex. 468; Zwernerman v. Rosenberg (Tex. Sup.) 11 S. W. 150; Low et al. v. Felton et al., 84 Tex. 378, 19 S. W. 693; Trueheart v. Sav. Loan Co. (Tex. Civ. App.) 64 S. W. 1003; Whitmire v. Bank (Tex. Civ. App.) 97 S. W. 512.

We quote as follows from Justice Roberts in the case of Green v. Rugely, supra:

"But the law recognizes certain rights allowed the widow and children of a decedent, to be of higher grade than the claims of creditors, and also gives a preference to some debts over others; and where there is a deficiency of assets to pay all, it makes provision for a ratable division among the creditors generally; and especial care is taken to prevent sacrifices, in sales of property to pay debts. * * * These, as well as other general objects of the law, pertaining to the estates of deceased persons, to be practically attained, require the adherence to it, as the ordinary rule, that creditors must pursue their remedies through the jurisdiction of the county court." Ansley v. Baker, 14 Tex. 607, 65 Am. Dec. 136; McMiller v. Butler, 20 Tex. 403; Cunningham v. Taylor, 20 Tex. 129. "The necessity to pursue this remedy, must be presumed to exist in every case, until facts are shown which make it an exception. * *. * It follows, from these propositions, that whenever a creditor seeks to subject the property of an estate to the payment of his debt, by bringing a suit in the courts of this state against an heir, or distributee, or some one in possession; or against any one who is not an administrator or executor of such estate; his petition must allege such facts, as bring him within some of the exceptions to the ordinary rule of proceeding."

Justice Gaines speaks as follows in the case of Zwernerman v. Rosenberg, supra:

"The question before us, however, is something more than a mere matter of the want of proper parties. It is a question of the right of the plaintiff to maintain any suit at all against the heirs of his debtor. Our statutes, in case of the death of a person without leaving a will, casts the title of his property directly upon his heirs, subject, however, to administration for the payment of his debts. They provide that the remedy of creditors for the collection of their claims shall be made by an administration in the county court. The policy of our probate laws has been held so stringent as even to require a creditor whose claim is secured by a deed in trust in the nature of a mortgage to go into the county court in order to enforce his lien. The provisions of the statute are deemed to be inconsistent with the execution of the power, and the power is held to be revoked by the death of the mortgagor. * * * In this case the plaintiff sought to bring himself within the exception, and alleged that he was the only creditor. This he failed to prove. On the contrary, it appeared upon the trial that there were other debts against the estate, and hence that there was a necessity for administration in order to adjust the respective rights of all the creditors. All could not have brought the action by joining in a common suit. It follows that it is not a case of a want of parties, but it is a case in which the evidence showed that the plaintiff had no right to sue. The allegation that the plaintiff was the sole creditor was necessary to enable him to maintain his suit. It was put in issue by the general denial, and when he failed to establish it his suit should have been dismissed."

The Court of Civil Appeals at Galveston, in the case of Truehart v. Savings Loan Co., supra, says:

"As a general proposition, it is a settled rule of decision in this state that an heir cannot sue and recover property of an estate without alleging and proving that there is no administration, * * * and that there is no necessity for such administration. Richardson v. Vaughan, 86 Tex. 93, 23 S. W. 640, * * * and it devolved upon the appellee [plaintiff] to show affirmatively that there was in fact no administration upon said estate."

Chief Justice Hemphill in case of Ansley v. Baker, supra, held:

"To permit the estate to be charged and its assets applied in another mode and by a different tribunal, from that prescribed by law, would be at war with the policy of the statute, and would produce discord and confusion where harmony might and should exist."

Our present Constitution, article 5, § 16, and our statutes, article 3206, vest in the county court. the general jurisdiction of a probate court and clothe said court exclusively with the authority to "transact all business appertaining to the estates of deceased persons, including the settlement, partition, and distribution of such estates." Over such matters, appellate jurisdiction only is conferred upon the district courts. See Pierce v. Foreign Mission Board, etc. (Tex. Com. App.) 235 S. W. 552.

[5, 6] No judgment can be rendered against an estate unless it has a legal representative before the court. An administrator, appointed by the courts of Ohio, could not, by virtue of said appointment sue or be sued in the courts of Texas, or in any way act as legal representative of said estate in Texas. An administrator is the agent solely of the court appointing him, clothed with authority to administer only such assets as are within the jurisdiction of the court making such appointment. In other words, an administrator has no extraterritorial authority. See Jones v. Jones Heirs, 15 Tex. 463, 65 Am. Dec. 174; Clarke v. Webster (Tex. Civ. App.) 94 S. W. 1088; Webster v. Clarke, 100 Tex. 333, 99 S. W. 1019, 123 Am. St. Rep. 813; Greer et al. v. Ferguson et al., 56 Ark. 324, 19 S. W. 966; Hare v. Pendleton (Tex. Civ App.) 214 S. W. 948.

[7] In view of above authorities, a valid administration of the estate in Texas must be through an administrator appointed in

Texas, either at the instance of some creditor or in the nature of an ancillary administration upon the suggestion of the Ohio administrator.

[8, 9] We think the judgments of the lower courts must be reversed. Counsel for plaintiffs in error pray that judgment be here entered dismissing the case or rendering judgment for their clients. They especially urge us to recommend a dismissal of the case. We do not think this should be done. We do not feel that it can be said that the case has been fully developed. Furthermore, the present status of this estate might easily affect the jurisdiction of the district court favorably to defendant in error. There are several possible ways in which Reed might yet assert his claim. We do not think he should be cut off by a dismissal of his case. To dismiss it at this time, almost five years after the alleged breach of the contracts in suit, would be, in effect, a rendering of final judgment for plaintiffs in error. It is well settled that the Supreme Court will remand rather than render final judgment in a case when justice will probably be better subserved by adopting the former course.

In support of our views just expressed we cite the following authorities: Green v. Rugely, 23 Tex. 539; Zwernerman v. Rosenberg (Tex. Sup.) 11 S. W. 150; Combes v. Stringer, 106 Tex. 427, 167 S. W. 217; Camden Fire Ins. Co. v. Yarbrough (Tex. Com. App.) 215 S. W. 842; Baker v. Shafter (Tex. Com. App.) 231 S. W. 349.

In the case of Green v. Rugely, supra, we quote from Justice Roberts as follows:

"It is not readily perceived, under the views here presented, in connection with the case of Ansly v. Baker, how the plaintiffs below could amend their petition so as to maintain this suit in the district court; but as the exceptions to the petition were overruled, and as it may not be proper to decide in advance, that no possible state of facts, which they might present upon amendment, would entitle them to relief, the cause will be remanded so as to give them an opportunity to amend, just as they could have done if their petition had been held insufficient upon the exceptions. Judgment reversed and cause remanded."

In the case of Zwernerman v. Rosenberg, supra, Judge Gaines speaks, in an almost identical case, thus:

"For the error of the court in not dismissing the suit upon the hearing the judgment is reversed, and the cause remanded."

We quote from Justice Hawkins in case of Combes v. Stringer, supra, as follows:

"We believe that while the more commendable practice would have been for Stringer to have seasonably presented to the trial court, in his pleading and through evidence, definite field notes or description of such land as had been so held in actual possession for said period the more equitable and better practice here, under

the circumstances, is to yet permit him to do so. The judgments of the Court of Civil Appeals and of the district court will be reversed and the cause remanded to said trial court."

For the reasons already set out, we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for further proceedings not inconsistent herewith.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.