MILLARD W. CHENEY, ADMINISTRATOR, ET AL. v. ALDEN COFFEY, NEXT FRIEND, ET AL.

No. 6955.   Decided February 16, 1938.
Rehearing overruled March 23, 1938.
(113 S. W., 2d Series, 162; 114 S. W., 2d Series, 533.)

*W. L. Dean, Perkins & Culbertson* and *H. S. Garrett,* all of Fort Worth, for plaintiffs in error.

It was error for the Court of Civil Appeals to enforce an alleged verbal contract by which Judge Bruce Young gave to Manton F. Cheney and wife the custody and control of the two children upon the agreement of Cheney that he would will to said minors, at his death, all the property he might then own, for that the consideration moving from Cheney was not only the transfer of his personal property, but the conveyance of the realty as well, and the contract, as a whole, was one within the Statute of Frauds, duly invoked by plaintiffs in error, and was therefore incapable of enforcement against them. Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114; Legate v. Legate, 87 Texas 248, 28 S. W. 281; Cleveland v. Ward, 116 Texas 1, 285 S. W. 1063.

*Cantey, Hanger & McMahon, Gillis A. Johnson,* and *Warren Scarborough,* all of Fort Worth, for defendants in error.

The contract between Judge Bruce Young, as judge of the juvenile court, and Manton F. Cheney and his wife, by which the latter adopted the minor children, was a valid contract which Judge Young had authority in the full exercise of the powers and duties conferred upon him by the statutes relating to dependent and neglected children to place them in the care and keeping of the said Manton F. Cheney and his wife. The Statute of Frauds has no application in such cases. 23 Tex. Jur. 717; Matthewson v. Fluhman, (Com. App.) 41 S. W. (2d) 204; Morris v. Gaines, 82 Texas 255, 17 S. W. 538; Texas Co. v. Burkett, 117 Texas 16, 296 S. W. 273.

MR. JUDGE MARTIN delivered the opinion of the Commission of Appeals, Section B.

The contest below in this case was between the blood relatives of Manton Cheney deceased and two children claiming to be adopted, and alleging a contract with Manton Cheney in his lifetime to make a will of his property to them. The exact nature of the issue below, upon which judgment was predicated, is very well illustrated by the following special issue submitted to a jury and answered favorably to the children:

"Special Issue No. 2: Question: Do you find from a preponderance of the evidence introduced herein that M. F. Cheney verbally agreed with Judge Bruce Young, acting for and in behalf of the minors, Betty June and Virginia Cheney, that he would will to said minors, at his death, all the property he might own at that time in consideration of said Bruce Young giving to said Cheney and wife the permanent custody and control of said minors, which custody and control should continue so long as the conditions surrounding said minors should continue to be for their physical and moral welfare?"

Upon the answer to this and other special issues, judgment was entered for defendants in error and affirmed by the Court of Civil Appeals. 82 S. W. (2d) 1024. We copy from that opinion:

"The father of these children abandoned them before the birth of the latter, and in February, 1929, when they were one and a half and three years of age, respectively, they were abandoned by their mother in Tarrant county. They were taken in charge by the juvenile officers and a dependency case made concerning them in the Forty-Eighth district court, Judge Bruce Young presiding. On a trial they were adjudged dependents, and judgment pronounced and entered of record that they be committed to the custody of the State Orphans' Home at Waco. Before they could be delivered to that institution, several people offered private homes for them, among them Manton Cheney and wife. Cheney stated to Judge Young that he would take the children permanently and would rear and educate them and give them his and his wife's personal care and guidance and will them his estate on his death. At Judge Young's request they took the children on trial only, but some days later returned to state that the children were satisfactory. On both of these occasions Judge Young told them they could not have the children unless they agreed to take them permanently and to will them all of their estate, and that the custody was subject to the children being removed from their control if they did not furnish them proper surroundings for the development of their physical, mental, and moral welfare.

"In September, 1929, the mother returned and called on Judge Young, and was advised by him and Cheney of the above facts. After some discussion, she signed a transfer of parental authority, and the Cheneys signed deeds of adoption, all of which were acknowledged but not filed of record up to the time of Cheney's death.

"In 1930 Mrs. Cheney procured a divorce from Mr. Cheney, and by the decree of that court, the Forty-Eighth district, these infants named as Cheneys were awarded to the custody of Mrs. Cheney. Mr. Cheney died in 1931 intestate."

Cheney's property at the time of the alleged contract consisted wholly of a personal estate, but at his death he had both personal property and real estate.

1 The estate or property referred to meant that owned by Cheney at his death, and not that owned and possessed when the alleged agreement was made. Basset v. American Bap. Pub. Soc., 215 Mich. 126, 183 N. W. 747, 15 A. L. R., p. 213.

2 The contract was entire and not divisible and since part of it was within the statute of frauds, it is unenforceable as a whole. Upson v. Fitzgerald, 103 S. W. (2d) 147; Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114, 15 A. L. R. 216; Waggoner v. Herring-Showers Lumber Co., 120 Texas 605, 40 S. W. (2d) 1.

The real question at issue was not affected by the relative value of the two estates, nor by the waiver of defendants in error of any claim to the real estate. The statute of frauds was properly pleaded and the question is foreclosed by the authorities cited.

3 This would finally dispose of this case, but for the condition of the record called to our attention by defendants in error. When this case was tried the status of our decisions relating to contracts of adoption was to say the least not clear. The pleadings before us do not justify a disposition by us of this case upon the theory of a contract to adopt, which we presently discuss. The evidence convincingly and very clearly raises such issue. We quote:

" 'What we have said requires a reversal of the judgments below, but we are of the opinion that we ought not to render the case. The statute provides that the Supreme Court shall reverse and remand, rather than reverse and render, a cause, when the justice of the case demands another trial. R. S., Art.

1771. Under this we have held that we will remand rather than render final judgment, where justice will probably be better subserved. Faulkner v. Reed, (Tex. Com. App.) 241 S. W. 1002. This rule is followed even in cases where the Supreme Court has power under the facts to reverse and dismiss the case. Faulkner v. Reed, supra; Green v. Rugely, 23 Texas 539; Zwernerman v. Rosenberg, (Tex. Sup.) 11 S. W. 150.' Waggoner v. Herring-Showers Lumber Co. et al., 120 Texas 605, 40 S. W. (2d) 4. See, also, Taylor v. U. S. Fidelity & Guaranty Co., (Tex. Com. App.) 283 S. W. 161; Donoho v. Lewis, (Tex. Com. App.) 12 S. W. (2d) 983." Kennedy et al. v. American Nat. Ins. Co., 107 S. W. (2d) 364, 112 A. L. R. 916.

We have concluded to reverse and remand rather than reverse and render which makes it necessary to mention the theory of recovery already adverted to.

These two children were placed in the home of Cheney, and treated as his own. They lived there until the separation between himself and wife, and thereafter with his wife until his death. They remained the objects of a fatherly love and devotion as long as he lived. He executed and acknowledged the following instrument of adoption:

"STATE OF TEXAS
COUNTY OF TARRANT

KNOW ALL MEN BY THESE PRESENTS: That We, M. F. Cheney and wife, Alyce Cheney, of said State and County, have, by this instrument, adopted Betty June Kimrey now of the age of four years and Virginia Kimrey now of the age of two years, the children of Violet Kimrey, as our legal heirs.

WITNESS our hands this the 19th day of September, 1929.

(Signed)  M. F. Cheney
(Signed)  Alyce Cheney."

The father of these children had deserted them, and his whereabouts was unknown. Their mother executed and acknowledged, as then provided by Article 44 R. S., the following transfer of parental authority and custody:

"STATE OF TEXAS
COUNTY OF TARRANT

KNOW ALL MEN BY THESE PRESENTS: That Whereas, on the 19th day of September, 1929, M. F. Cheney and wife, Alice Cheney, of Tarrant County, Texas, duly adopted Betty June Kimrey, now four years of age, and Virginia Kimrey, now two years of age, my children, in accordance with the statutes of

this state, and in consideration of such adoption and of the responsibilities and obligations imposed upon M. F. Cheney and Alice Cheney by reason thereof, I, Violet Todd, formerly Violet Kimrey, the undersigned parent of said children, have transferred, and do by these presents transfer unto M. F. Cheney and wife, Alice Cheney, my parental authority and custody over said children and each of them.

WITNESS my hand this 19th day of September, 1929.

> (Signed)  Violet Todd, formerly
> Violet Kimrey."

Other cogent evidence exists of his intention and purpose to adopt these children as his heirs, not deemed necessary to mention.

4  These acts, neither as a whole nor singly, violated any public policy of this State. The letter of the statute was not complied with, because the adoption paper was not recorded. How could it be said that an attempt to save a helpless child violated any public policy, especially when that attempt followed the very language of a statute? "A constitutional statute can not be against public policy since it is public policy." Midway Realty Co. v. St. Paul, 124 Minn. 300, 145 N. W. 21.

" * * * public policy is that principle of the law which holds that 'no one' can lawfully do that which has a tendency to be injurious to the public or against the public good; * * * . In a judicial sense, public policy does not mean simply sound policy or good policy, but it means the policy of a state established for the public weal either by law, by courts, or by general consent." 50 C. J., p. 858.

The following quotations sufficiently indicate our view of the principles of law controlling the present question:

"According to the substantially unanimous current of authority, a contract to adopt or to take a child as an heir, though made with a third person for the benefit of the child, is enforceable by the child." 1 Am. Jur., p. 632.

"On the other hand, however, where there is, as is usually the case, statutory procedure for adoption, under the principle that equity will consider that done which ought to have been done, the authorities very generally establish the proposition that a contract by a person to adopt the child of another as his own, accompanied by a virtual, although not a statutory, adoption, and acted upon by both parties during the obligor's life, may be enforced, upon the death of the obligor, by adjudging

the child entitled to a natural child's share in the property of the obligor who dies without disposing of his property by will." 2 C. J. S., pp. 399-400.

"The courts have uniformly assumed the validity of executory contracts to adopt.

"An oral contract to adopt, so far as it relates to establishment of the relations of paternity and filiation, is generally regarded as valid. An oral promise to make a child the promisor's heir is not within the Statute of Frauds as a promise not to be performed within a year, although the promise does not operate as an adoption. Likewise, the Statute of Frauds does not preclude the specific performance of an oral contract to adopt where the proof of part performance is clear and unequivocal and is clearly referable to the contract." 1 Am. Jur., p. 630.

See also Cubley v. Barbee et al., 123 Texas 411, 73 S. W. (2d) 72; 27 A. L. R., p. 1365 et seq.; Hickox v. Johnston, 113 Kan. 99, 213 Pac. 1060, 27 A. L. R., p. 1322 and notes pp. 1325 et seq.

We do not mention questions which may be only abstract upon another trial.

The judgment of the trial court and that of the Court of Civil Appeals is reversed and cause remanded.

Opinion adopted by the Supreme Court February 16, 1938.

### ON MOTION FOR REHEARING.

In making general quotations, and in our original opinion, we do not commit the Court upon questions not presented in the record before us. Obviously this Court in the present case has not before it the naked question of the validity of an oral contract to adopt, and does not decide that question.

We decline to be led into a further discussion of the contract pleaded and relied on for recovery in this case. The question is sufficiently discussed and pointedly decided in Hooks v. Bridgewater, 111 Texas 122, 229 S. W. 1114, 15 A. L. R. 216, and unless we are prepared to overrule that case, a discussion would be useless.

Motion overruled.

Opinion adopted by the Supreme Court March 23, 1938.