## DEATHERAGE v. FORT WORTH & D. C. RY. CO.

### No. 14274.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 26, 1941.

Rehearing Denied Oct. 31, 1941.

Marvin B. Simpson and Robert Harrison, both of Fort Worth, for appellant.

Thompson & Barwise and Luther Hudson, all of Fort Worth, for appellee.

BROWN, Justice.

Grover H. Oates was killed by appellee Fort Worth & Denver City Railway Company, and such appellee having made settlement with his surviving widow, appellant, being administratrix of the estate of deceased Oates, brought suit to recover damages sustained by two children on the theory that they are in the eyes of the law the adopted children of the deceased, even though the statutory method of adoption was not complied with by Oates.

The trial court sustained the demurrer of the defendant and dismissed the case. The appeal followed.

The allegations upon which the claim rests are as follows:

"The plaintiff alleges that at the time the said deceased, Grover Oates, was killed he left surviving him his wife, whose claim for damages on account of the death of Grover Oates, the defendant railway company has already settled, and two adopted children, namely, Ruth Phillips and Billie Massey, both unmarried, of the age respectively of 20 and 21 years, and left no other child or children surviving him; and the plaintiff brings this suit as personal representative of the said deceased, in the capacity of administratrix thereof and for the use and benefit of said children.

"The plaintiff pleads the facts as to the adoption of Ruth Phillips and Billie Massey as follows: Their parents were divorced, the mother being awarded custody of the children, and it thereafter became necessary for her to place them in an orphans' home. Grover Oates, who was their uncle, proposed to their mother that if she would consent to his taking the children and raising them for his own he would adopt them as his own daughters, and it was thereupon mutually agreed between him and the moth-

er of said children that he should do this. In pursuance of this agreement and contract for the adoption of the children the said mother relinquished all rights and claims on them as her children, and Grover Oates took them from the orphans' home and installed them in his own home, and thereafter they lived with him and his wife until he and his wife separated, and thereafter he took care of the children and either lived in the same house or apartment with them, or arranged for their mother to live with them and look after them, but Grover Oates continued to keep control and direction of them, and to support them and care for them in all ways as he would for his natural children. That he held them out to the public as his daughters, and so introduced them to various people and stated to various friends and acquaintances that he had adopted them. That the children acted toward Grover Oates as any obedient daughter would to her natural parents, and performed all the household duties in the Grover Oates household that they were capable of performing, and assisted Grover Oates and his wife in the household work and in work connected with a cafe which Grover Oates was at that time conducting in the same building where he made his home. That after he took up his residence down town in a hotel which he was operating, the children would visit him regularly and frequently, and look after his comfort in such ways as they could. That during this time he received all the benefits and privileges of this relationship with the said children, who conducted themselves as his daughters, and acted toward him as they would have if they had been his natural children. That this agreement for adoption was made by their mother for their benefit, and was lived up to by her as well as by Grover Oates until the time of his death; and that at the time of his death the said children were, on account of the facts stated in this paragraph, his legally adopted children in all respects and as fully as if they had been adopted by the statutory method."

The United States statute made the basis for recovery provides: "Liability of common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence. Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." This is Section 51, Title 45 U.S.C.A.

It will be observed that this statutory right of recovery is vested in the personal representative of the deceased employee for the use and benefit of certain named survivors.

In such a case as is before us the right of recovery is purely statutory and the courts are without authority to enlarge the provisions of the statute so as to make them extend beyond the reasonably necessary intendments of the Act.

Because the word "children" is used in the statute to designate one class of beneficiaries, it was quite natural for the courts to interpret the act as applying to legally adopted children.

This ruling is predicated upon the laws of the several states of the Union which declare in certain terms that the status of a legally adopted child is the same as that of a child born in wedlock.

If we are able to analyze appellant's contention, it is that the facts and conditions recited in the allegations of her petition disclose that a status has been created for the children whom she represents; that such status is to all intents and purposes that of a legally adopted child and such status prevails as against all persons whether in privity with the foster parent, or not.

We cannot agree with such contention.

Appellant relies upon Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72, Cheney v. Coffey, 131 Tex. 212, 113 S.W.2d 162, and Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, all being authorities from the Supreme Court of Texas.

We are of opinion that the holdings in the cited cases may be summed up tersely

**920**

as establishing the rule in Texas that, under the facts disclosed in each of such cases, neither the adoptive parents nor their privies may successfully deny the rights of the child even though the adoption was not effectuated according to the adoption laws then in force.

No such situation is presented in the instant suit.

Here we have a legal representative of a deceased person attempting to make a third person, not in privity with the deceased, respond in damages upon the theory that the beneficiary, for whom the suit is brought, although not a legally adopted child, is entitled to recover from the third person, by reason of the acts of the deceased.

We do not believe that this court would be warranted in extending the provisions of the Federal Statute, as is contended for by appellant. Perez v. Central Power & Light Co., Tex.Civ.App., 27 S.W.2d 641, writ refused; Boudreaux v. Texas & N. O. Ry. Co., 78 S.W.2d 641, writ refused; 16 Am. Jur., section 100, page 75.

The judgment is affirmed.