Scott RAMSAY, Individually and as Administrator of the Estate of Victor William Durham, Deceased, Appellant,

v.

Jo Ann Patterson LANE, Appellee.

No. 16266.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 28, 1974.

Rehearing Denied March 28, 1974.

William W. Byrd, Houston, for appellant.

Joel B. Coolidge, Thomas E. Green, Jr., Houston, for appellee Urban, Coolidge; Pennington & Scott, Houston, of counsel.

COLEMAN, Chief Justice.

This suit was instituted as an action to determine heirship. The only question involved is whether an adoption by estoppel has been established. After a trial to the court without a jury a judgment was entered finding that Jo Ann Patterson Lane was the adopted daughter of Victor William Durham, deceased, and his sole heir at law.

James and Geraldine Patterson were the parents of two daughters, Jo Ann and Vivian. Soon after the birth of Jo Ann, Mrs. Patterson abandoned the family and moved to California. James and the children lived with his mother until her death. At that time Jo Ann was about three years of age. Mr. Patterson then left the two little girls with Victor William Durham

and his wife. They were people of very modest circumstances and determined that they were unable to support both children. The Durhams then arranged for Vivian to live with neighbors, Mr. and Mrs. Roberts.

When James returned to the Durham home and discovered that Vivian was living with Mr. and Mrs. Roberts, he became angry and engaged in an abusive argument with the Durhams in front of their house. He particularly objected to the fact that the Durhams had moved Vivian out of the house and also that Mrs. Durham had written him for money for the children. Mrs. Roberts testified that she heard the conversation and heard Mr. Patterson tell the Durhams that they could have Jo Ann and that they could adopt her. She also testified that Mr. Durham said: "James, we will adopt the child, we will support her, we will raise her, but we do not want you back on our property in this condition." Vivian Parmer testified that both Mr. and Mrs. Durham told her when she was about fourteen years old that they had an agreement with James Patterson to adopt Jo Ann. James did not visit Jo Ann after that occasion. Vivian continued to live with Mr. and Mrs. Roberts and visited with her father at times. She located·her mother in California and visited her one time. Jo Ann did not visit her mother and saw her father only one time.

Mrs. Durham predeceased her husband. No children were born to them. There is testimony that they treated Jo Ann as a daughter normally would be treated, loving her, providing for her, and disciplining her, and that Jo Ann treated them as her parents. She lived in their home until the death of Mr. Durham in 1967. She introduced them to her friends as her mother and father. She was baptized as Jo Ann Durham and was registered in church school and Sunday school under that name. When she was enrolled in public school, she was required to use the name that appeared on her birth certificate, Jo Ann Patterson. She knew, and visited with, her sister, Vivian Patterson. She called Mrs. Durham "Mother," but called Mr. Durham "Uncle Vic." They referred to Jo Ann as "Daughter" at times, but more often by name or by affectionate names, such as "Baby" and "Dumpling." Not long before she graduated from high school, Mrs. Durham called an attorney to discuss a formal adoption. When she learned the cost of bringing such proceedings, she discussed the matter with Jo Ann and with her husband. They decided not to proceed because of the expense.

The leading cases on adoption by estoppel are discussed by Professor Edward W. Bailey in the Comment, "Adoption 'By Estoppel,'" 36 Tex.L.Rev. 30 (1957). In this article Professor Bailey concludes by saying:

"The study of the Texas cases dealing with informal adoptions would seem to justify a statement something like the following: When the statutory adoption procedure has not been observed, in order to establish an adoption 'by estoppel' which will enable the child in question to take an intestate share in the 'parent's' estate, it is necessary to prove the making of a 'contract' which, on principle, was void, when made, which, it is conceded, is not enforceable during the life of the adopting parent, and which the courts in the ruling cases deny they are enforcing after the death of the adopting 'parent,' the only function served by the 'contract' being that it constitutes a representation to a child who as likely as not has no inkling of its existence and at best has no exact knowledge of its terms. This statement of the doctrine, however—although not an inaccurate analysis of what the opinions say —is not altogether fair to the courts. What it omits to state, if the analysis suggested here is correct, is the fact that the 'contract' is really important because it reflects the intention of the adopting parent .to make the child his or her heir, as well as to rear and care for the child, and that prevail-

ing notions of justice are believed to require that such an intention should be given effect. While the courts, faced with the Statute of Wills and the Statute of Descent and Distribution, could scarcely state in their opinions that the expression of an intention by the adopting parent to make the child an heir, followed by custody and support, is sufficient to create a right of inheritance, the presence of a 'contract' not only manifests the existence of the required intent but also aids in surmounting barriers of language by lending some degree of plausibility to the fiction that the child has relied upon a representation that it is a lawful heir. In the face of a difficult situation the courts have made the best of available legal materials."

In Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951), the court said:

"Thus, also, where a child was delivered by its natural parent into the custody of others, under an agreement between the parent and the custodians that the child would be adopted, and the custodians and the child thereafter assumed and lived in a relationship wholly consistent with that of parent and child, this Court held that the adoptive status of the child would be upheld. Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77. This holding was also based upon the equitable doctrine of estoppel."

■ The evidence is sufficient to sustain the finding of the trial court that "Victor William Durham entered into an agreement with James Patterson that Victor William Durham would adopt Jo Ann Patterson Lane." The evidence also sustains the finding that "in reliance on such agreement, Jo Ann Patterson Lane lived with Victor William Durham and accorded him the natural love and affection a child would toward her natural parent." It is undisputed that Mr. and Mrs. Durham took Jo Ann Patterson into their home and cared for her as they would a natural child. The elements of an adoption by es-

toppel are established. Malone v. Dixon, 410 S.W.2d 278 (Tex.Civ.App.—Eastland 1966, writ ref., n. r. e.).

Appellant contends that there is no proof that appellee relied on a contract to adopt and that the trial court erred in finding that she did rely on such an agreement. Price v. Price, 217 S.W.2d 905 (Tex.Civ.App.— Amarillo 1949, writ ref., n. r. e.), is the only case cited in support of these points. In Price the trial court granted an instructed verdict, in effect finding as a matter of law that there was no adoption by estoppel. It was contended in that case that the father of an illegitimate child agreed with its mother to adopt the child. The testimony of the mother revealed only an offer to adopt, which the mother refused. The mother retained the child in her custody. Since there was no contract and no change of custody, obviously there could be no reliance on an agreement to adopt.

■ Here we have an agreement to adopt and the establishment of a family relationship pursuant thereto. While there is testimony to the contrary, there is evidence that the Durhams represented that Jo Ann was their child by their words and actions. An inference can be drawn that by such conduct Jo Ann was led to believe that she had been adopted, and that she continued the family relationship in reliance on the agreement. Those in privity with Mr. and Mrs. Durham are estopped to deny that Jo Ann has the status of an adopted child. Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72 (1934); Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906 (1940).

Appellant contends that there can be no adoption by estoppel in this case because there is no evidence that the natural mother of Jo Ann consented to the alleged agreement to adopt.

In Cavanaugh v. Davis, supra, the court states that there must be an agreement to adopt between the proposed adoptive parent or parents and either the child, her

parents, or some other person in loco parentis. In Malone v. Dixon, supra, the agreement was made with the superintendent and agent of the Texas Children's Home. The child was placed in the home by his aunt after his parents had died. In Hilt v. Hooper, 203 S.W.2d 334 (Tex.Civ. App.—Galveston 1947), after the death of the natural parents of the child her stepfather entered into an agreement with the adoptive parents. The child was also found to be a dependent child in County Court and the adoptive parents agreed with the County Judge that they would adopt the child. In Cheney v. Coffey, 131 Tex. 212, 113 S.W.2d 162 (1938), the two children were declared dependent children by a district court and judgment entered that they be committed to the custody of the State Orphans' Home at Waco. Both the father and mother had abandoned the children. The judge placed them with the Cheneys on their agreement to take them permanently and to will them all of their estate. The mother of the children signed a transfer of parental authority. The Cheneys signed and acknowledged deeds of adoption which were not filed of record as required by the adoption laws of the State at that time. The court stated that its views were indicated by the following quotation from 1 Am.Jur., p. 632: "According to the substantially unanimous current of authority, a contract to adopt or to take a child as an heir, though made with a third person for the benefit of the child, is enforceable by the child."

We are not concerned here with the right of the mother to retake custody of her child from one who has agreed with the other parent to adopt the child. We are concerned only with the rights of the child as against privies of those found to have agreed to adopt her.

While the record establishes that Jo Ann's mother had deserted her, this fact is immaterial. The collateral heirs of Mr. and Mrs. Durham cannot take comfort from the fact that the agreement to adopt is not in all respects an enforceable contract. See Comment, "Adoption 'By Estoppel' ", supra. The agreement is enforced because after performance by the child in reliance on the agreement, and the acceptance of the benefits by the adoptive parents of such performance, it would be inequitable to deny the child the adoptive status.

Affirmed.