In the Matter of the Construction of the Will of CARRIE T. STEVENS, Deceased.

Surrogate's Court, Monroe County, May 6, 1948.

*Hamlet A. Smyth* and *Samuel Levy* for Doris M. Kuntor, petitioner.

*Kenneth W. Lussier, Merwin Morehouse* and *H. Nile Eddy* for Stella Sheridan, as executrix of Carrie T. Stevens, deceased, respondent.

WITMER, S. Testatrix bequeathed nearly half of her estate to petitioner and devised and bequeathed the balance to her sister, the respondent. Testatrix died June 17, 1947, without natural child or issue. Her will bears date July 14, 1944, and this court has granted its probate, but has stayed the issuance of letters testamentary pending the determination of the issue raised by this petitioner. Petitioner claims that by virtue of an agreement entered into between John C. Stevens and testatrix, his wife, with the New York Foundling Hospital on or about November 18, 1912, she is entitled to the entire estate. The proof submitted stands undisputed but respondent questions its sufficiency and the legality of the agreement.

Petitioner was born January 15, 1909. On July 28, 1910, she was placed in the New York Foundling Hospital (hereinafter referred to as " the hospital ") by the bureau of charities of the borough of Brooklyn, N. Y. In 1912, John C. Stevens and wife, the testatrix, made written application to the hospital " to adopt an orphan child " (Ex. 3). Pursuant to such application on September 25, 1912, petitioner arrived at the home of Mr. and Mrs. Stevens in Rochester, N. Y., and in accordance with the hospital's practice on or about November 18, 1912, Mr. and Mrs. Stevens executed the written agreement (Ex. 1) with the hospital concerning the terms of the placement. The agreement contains the following provision: " VIII.— And the parties of the second part further agree, that, if said child be not returned to the party of the first part when she

attains the age of Eighteen years, or shall not have been so returned before she shall have attained such age and this Agreement of Indenture be duly cancelled and annulled by the consent of both parties, or if said child be not legally adopted by said parties of the second part before said child attain such age, then the parties of the second part, in consideration of this Indenture and of being permitted by the party of the first part to keep such child, shall be deemed to have elected to keep, treat and maintain said child as if it were their own natural and legitimate child. And the parties of the second part further agree that, if the parties of the second part shall die intestate, said child shall inherit and succeed to such share of the property, real and personal, of which the parties die seized and possessed as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part; and that if the parties of the second part shall die leaving a last will and testament, such will shall contain a provision or provisions, giving, bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator, as she would have received if said testator had died intestate and said child had been the natural and legitimate child of the parties of the second part.''

The proof fully shows that Mr. and Mrs. Stevens treated petitioner as their own child in accordance with the terms of the agreement not only until she arrived at the age of eighteen years but long thereafter and as long as they lived. Petitioner was never returned to the hospital. She conducted herself as a dutiful daughter toward Mr. and Mrs. Stevens until she attained the age of eighteen years and thereafter until their respective deaths. At an early age she was baptized as Doris Marie Stevens. The friends and neighbors of Mr. and Mrs. Stevens who knew that petitioner was not their natural child believed that she had been adopted by them. There was a close parent and child relationship between Mr. and Mrs. Stevens and petitioner. She always referred to them as her father and mother, and to respondent as her aunt. The announcements of petitioner's wedding sent by Mr. and Mrs. Stevens referred to her as their daughter, and the same seems to be true of all their references to her. It is clear that all of the provisions of the agreement have been fulfilled by the parties thereto, except as to the disposition of their property by Mr. and Mrs. Stevens; and petitioner conducted herself as contemplated by the **agreement.**

John C. Stevens died in 1937, leaving $1,000 to petitioner and the balance to his wife. On October 30, 1938, petitioner executed a release to the executor of the will of John C. Stevens, deceased, presumably upon receiving the $1,000 legacy only. That release is one of the many matters now raised as a bar to petitioner's claim against the estate of the testatrix.

Respondent also contends that there is no proof that the child was released or abandoned to the hospital; that the hospital had no authority to enter into the above-mentioned agreement; that this placement was not one contemplated by the statutes existing at that time because petitioner was then too young to render services; and that the agreement is in derogation of the adoption laws of this State and of the statutes relating to the descent of property and to the testamentary disposition of property, and hence is against public policy.

After the lapse of thirty-five years since this placement was made it is only natural that some difficulties of proof should be encountered by petitioner. Concerning the right of the hospital to place petitioner, in all its aspects, it seems to me that Mr. and Mrs. Stevens, as well as the hospital, were obligated to ascertain that the right to make the placement existed. The fact is that no objection was ever made to the placement, and the agreement was fully performed and the purposes of the placement were fully accomplished at the time of the death of the testatrix, except for the provisions made by testatrix for the disposition of her property. Even if technical objections could have been raised to the agreement and the placement at and after the time thereof by petitioner's parents or by any of the parties to the agreement or by any public authority, still, after petitioner arrived at eighteen years of age, Mr. and Mrs. Stevens as participants in and beneficiaries of the agreement could not be heard to complain with respect thereto. (See *Seymour* v. *Spring Forest Cemetery Assn.*, 144 N. Y. 333, 341; *Thompson* v. *Finholm*, 77 N. Y. S. 2d 78.) Respondent, as legatee of testatrix, can have no better standing than the testatrix.

Respondent argues that the evidence shows that Mr. and Mrs. Stevens thought that they were adopting petitioner and had in fact done so by the act of signing the agreement, Exhibit 1, and that they did not contemplate that the agreement would restrict their right to dispose of their property by will any more than would have been the case had petitioner been their natural child. The answer to this contention is the agreement itself. In the absence of a claim of fraud Mr. and Mrs. Stevens

could not successfully contend that they did not mean what was so clearly expressed in the agreement. (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162–163; *Matter of Holicky*, 76 N. Y. S. 2d 637.) As said above respondent has no greater right than her testatrix.

Where A takes a child under an agreement to adopt her, and fails to adopt her, the infant may make claim against A's estate for the damages resulting from such failure. (*Miller* v. *Elliott*, 266 App. Div. 428.) Respondent claims that this is the limit of petitioner's rights and that the right of the testatrix to dispose of her property by will cannot be restricted by an agreement as relied upon by the petitioner because it is against public policy. The authorities are clearly to the contrary, and petitioner is entitled to enforce testatrix's agreement to leave her as much of her property as petitioner would be entitled if adopted and if testatrix had died intestate. (*Winne* v. *Winne*, 166 N. Y. 263; *Middleworth* v. *Ordway*, 191 N. Y. 404; *Seaver* v. *Ransom*, 224 N. Y. 233; *Gavin* v. *Aitken*, 258 N. Y. 595; *Weinberger* v. *Van Hessen*, 260 N. Y. 294; *Brantingham* v. *Huff*, 43 App. Div. 414; *Levenson* v. *Mayerowitz*, 181 Misc. 526.)

By virtue of the agreement the equitable title to all of testatrix' estate, subject to the payment of funeral and administration expenses and debts, vested in petitioner, Doris M. Kuntor, as of the date of testatrix' death (*Matter of Wentworth*, 188 Misc. 174, affd. 272 App. Div. 974) and the will is construed accordingly. The legal representative for the estate, after payment of the debts, funeral bill and administration expenses, must transfer and convey all of the remaining assets of testatrix to the petitioner.

Under the circumstances letters testamentary will not issue to the respondent until she files a bond herein to be fixed upon a proper showing of the requirements of the case.

Submit decree accordingly.