**Herman LANGE et al., Appellants,**

v.

**Martha Bridget SCHULTE et vir, Appellees.**

**No. 6357.**

Court of Civil Appeals of Texas.

Amarillo.

Jan. 11, 1954.

Rehearing Denied March 1, 1954.

Cowsert & Bybee, Hereford, for appellants.

Jennings & Jennings, Tulia, Culton, Morgan, Britain & White, Amarillo, for appellees.

MARTIN, Justice.

This opinion, originally conceived as a dissenting opinion, being adopted by each associate justice is rendered as the majority opinion of the court.

Appellee, Martha Bridget Schulte, formerly Bridget Lynch, joined by her husband, Ray Schulte, brought this suit against appellants, Herman Lange and Ester Noble, independent executors of the will of Henry Lange, deceased, and The New Subiaco Abbey, a corporation, and Elizabeth Lange and Mary Lange, sisters of Henry Lange, deceased, devisees under the will of Henry Lange, deceased. Appellee, Martha Bridget Schulte, was originally placed in the home of Henry Lange and wife, Barbara Lange, by the New York Foundling Hospital, under a written indenture. Appellees' cause of action is founded on the theory that under this written indenture Martha Bridget Schulte was entitled to receive all of the property of Henry Lange and wife, Barbara Lange, on their death. Such theory is based on appellees' contention that the indenture provided Bridget Lynch should receive a natural child's part of the Lange estate and such part would be all of the estate of the Langes as she was by adoption their only child. From a judgment decreeing specific performance of such indenture or contract and divesting all the estate of Henry Lange out of appellants and investing the same in appellee, Martha

Bridget Schulte, appellants perfected an appeal.

Appellants' Point 1 asserts that the contract in issue in this cause shows upon its face that in the event the Langes legally adopted appellee, Bridget Lynch, before she reached the age of eighteen years, they did not contract to devise their property to her, and it being admitted that they did so adopt her, the trial court erred in overruling appellees' Special Exception No. 1 and entering judgment awarding the property of the Langes to her. This point is well taken and the exception should have been sustained in the trial court under the principles hereinafter set forth.

■ The language of the contract, or indenture, is plain and unambiguous and the law involving the construction of such instrument is as follows: " 'Through all the rules governing construction of instruments, there runs the central thought of ascertaining the real intention of the parties.' * * * the intention, 'if possible,' should be gathered from the instrument itself." Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306, 308.

■ It will not be necessary to quote the entire contract or indenture. The first seven numbered provisions of the contract will be passed over briefly with the observation that such paragraphs reveal clearly that the intent of the parties to the contract was merely to secure to the minor child the same care, education, and treatment as if she were in fact the child of Henry Lange and Barbara Lange. In the paragraphs dealing with the care of the child during minority there is not a single provision as to securing to the minor any property right. As the issue on this appeal as to property rights arises out of the construction of Paragraph VIII of the indenture, the same will be quoted:

"VIII. And the parties of the second part further agree, that, if said child be not returned to the party of the first part when she attains the age of Eighteen years, or shall not have been so returned before she shall have attained such age and this Agreement of Indenture be duly cancelled and annulled by the consent of both parties, or if said child be not legally adopted by said parties of the second part before said child attain such age then the parties of the second part, in consideration of this Indenture and of being permitted by the party of the first part to keep such child, shall be deemed to have elected to keep, treat and maintain said child as if it were their own natural and legitimate child. And the parties of the second part further agree that, if the parties of the second part shall die intestate, said child shall inherit and succeed to such share of the property, real and personal, of which the parties die seized and possessed as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part; and that if the parties of the second part shall die leaving a last will and testament, such will shall contain a provision or provisions, giving, bequeathing and devising to said child at least as large a share of the estate, real and personal, of the testator, as she would have received if said testator had died intestate and said child had been the natural and legitimate child of the parties of the second part."

It should be first observed that Bridget Lynch was adopted by the Langes when she was seven years of age and that the indenture does not even purport to deal with the rights of an adopted child in any respect. Nor is there any provision in the contract that even tends to express a requirement that the Langes either keep or adopt Bridget Lynch. Paragraph VIII, under correct rules as to composition, deals with only one subject—the rights of Bridget Lynch "if said child be not returned" and "if said child be not legally adopted". The parties executed the indenture to assure to Bridget Lynch the status of a natural and legitimate child of the Langes and her right to a

portion of their estate in the event she was not returned to the hospital and was not adopted by the Langes. It would be a strained judicial construction to decree that Paragraph VIII embodies two separate and distinct subjects and that the provisions in the paragraph as to property had no relation whatever to the principal subject therein, to wit: The rights of the child "if said child was not returned * * * or if said child be not legally adopted". The language of the provisions as to property cannot reasonably be construed as unconditionally binding the Langes to devise all, or any part of, their property to Bridget Lynch in the event of her adoption by the Langes.

Although the contract must be construed solely from the plain and unambiguous language used therein it will not be amiss to examine the indenture in the light of the construction placed thereon by all the parties at interest. "In this instance the acts of the parties indicated the construction mutually placed upon the contracts at the time, including the acts done in their performance, and same are entitled to great if not controlling weight." Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566, 570.

The indenture was executed on the 7th day of August, 1922. Thereafter, on the 2nd day of July, 1934, Barbara Lange duly executed a will disposing of her estate as follows, "I give all my estate, both real and personal, or mixed, and whereever situated to my beloved husband, Henry Lange." This will evidences the fact Barbara Lange did not recognize that she had contracted to devise her entire estate, or any part thereof, to Bridget Lynch Schulte. The record reveals that following the death of Barbara Lange on or about August 9, 1949, her will was admitted to probate and there is no evidence that appellees contested the probate of the will. Nor did appellees contest the title to the realty vested in Henry Lange under the will on the theory that Barbara Lange had executed the indenture binding her to devise her estate to Bridget Schulte. Following the probate of this will, appellees accepted a warranty deed to 320 acres of the estate from Henry Lange, a single man who executed the deed of conveyance to appellees "individually and as independent executor and sole devisee under the will of Barbara Lange, deceased." Following these transactions, Henry Lange also revealed his interpretation of the indenture. He did not understand the indenture as binding him to devise his entire estate to the adopted child as he devised his estate to the Abbey and to his two sisters and his will contained the following provision: "I have heretofore given to my children certain property during their lifetime and I, therefore, intentionally omit them from this, my last will and testament except that which may be inherited or descend to them in the event my sisters, above named, predecease me."

The above undisputed facts should be enough to conclude the issue as to the construction of the indenture and the intent of the parties thereto. In fact, appellees should be concluded,[1] if not estopped, by the acceptance of the warranty deed alone. But, appellees' principal contention is that the following quoted provision as to property has no relation to the indenture provision contained in the same paragraph, to wit: "if said child be not legally adopted". This issue will be discussed briefly. Appellees' contention is that the following clause applies unconditionally and is not contingent upon any other provision of the contract, "And the parties of the second part further agree, that if the parties of the second part shall die intestate, said child shall inherit and succeed to such share of the property, real and personal, of which the parties die seized and possessed as would have descended or would have been distributed to said child if she had been the natural and legitimate child of the parties of the second part; * * *." Bridget Schulte was adopted by the Langes and as a matter of law would have inherited, under the Statutes of Descent and Distribution, that part of the estate as would have been

1. Funk & Wagnalls New Standard Dictionary (1927), "conclude", Page 549, Sec. 5.

distributed to a legal heir of the Langes. Harle v. Harle, 109 Tex. 214, 204 S.W. 317, Syl. 4. When the Langes adopted Bridget Lynch, the clause as quoted was therefore mere surplusage and had no application under the proven facts in the record. The parties are deemed to have contracted with knowledge of the law and it is a sound conclusion that the provision as to Bridget Lynch's rights in and to the property if the Langes died intestate had reference solely to the contingency "if said child be not legally adopted". At least, it is an inescapable conclusion that when Barbara Lynch was adopted by the Langes any necessity for the above quoted provision as to her right of inheritance should the Langes die intestate ceased to be of any importance in securing any right to Bridget Lynch not already possessed under the laws of the State of Texas. Of like application is the provision as to the execution of a will by the Langes. The provisions of the Statutes of Texas as to adoption have never prevented anyone from disposing of his property by will nor are the Statutes of Descent and Distribution operative where property is devised by a valid will.

Under the interpretation of the contract, as above outlined, it must be conceded that appellee, Bridget Lynch Schulte, would receive all the rights of a natural and legitimate child of the Langes if adopted. Bridget Lynch was adopted and thereby was fully protected by the laws of adoption as to her right of inheritance from the Langes. If she had not been adopted it was intended by the parties that she would be protected by the indenture. In re Steven's Will, 192 Misc. 179, 78 N.Y.S.2d 868, affirmed 274 App.Div. 1024, 86 N.Y.S.2d 480.

A brief survey should be made of the rights of the parties under the construction given the indenture in the trial court and as asserted by appellees on this appeal. Under such construction, Barbara Lange could not have left any part of her estate to her surviving husband in their declining years nor could her husband have left any part of his estate to her but each was required, upon executing a will, to devise all of his or her estate to the adopted child.

Therefore, the rights of the adopted child were superior even to the rights of the surviving wife or husband. Further, under such construction, the adopted child, had any children been born to the Langes, would have had a superior right to the estate of the Langes over such natural children. The Langes were not required to devise by will any property to a natural child of the marriage nor would a natural child take under the Statutes of Descent and Distribution in the event a will had been executed by the Langes. Thus the adopted child was secured in her inheritance in any event by the indenture if the above construction is accepted.

Under the construction given the indenture as discussed in the preceding paragraph, few husbands or few wives would be willing to execute such an indenture whereby they agreed to devise all their property to an adopted child and thereby wholly disregard any right of the surviving wife or husband. Homeless children would have little hope of adoption under an indenture that gave an adopted child paramount rights over the surviving husband or wife and also over the natural children born to the marriage. Nor would the family relationship exist long under such unnatural conditions. Such a situation "tends to the destruction of one of the finest relations of human life, to the subversion of the family tie". Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 1118, 15 A.L.R. 216.

The construction placed on the indenture in the trial court not only brings into effect the results as above detailed but also attributes to the foundling hospital a penurious and grasping nature on behalf of the adopted child that is not born out by the indenture in any respect. The hospital in no manner sought to secure to the child any property rights whatsoever during minority and the Langes had the free right to return the child on or before she attained the age of eighteen years. It is not a reasonable construction of the indenture that the hospital intended to secure to the child on maturity greater rights than in minority. Further, there is not a single provision in

the indenture binding the Langes to either keep or adopt the child—the hospital wisely left this contingency to the love and affection developing between the parties. The wisdom of the contract is proven by the fact of adoption and by the further fact that Henry Lange conveyed to the adopted child 320 acres of land prior to the execution of his will.

In conclusion, a further material issue should be discussed. At the time the contract was drawn, the foundling hospital had the legal right as to the full custody, control, and care of Bridget Lynch—when Bridget Lynch was adopted by the Langes such right of custody, control, and care of the child passed from the hospital to the Langes under the provisions of the laws of Texas as to adoption. It is a sound conclusion that when the full right of care, custody, and control of Bridget Lynch passed from the hospital to the Langes under the provisions of the laws of Texas as to adoption that such child's rights as to inheritance likewise became fixed by the same laws. It was never the intention of the parties to the indenture that the Langes should have the full care, control, and custody of Bridget Lynch on adopting her as their child while the property of the Langes and the adopted child's right of inheritance to the same were governed solely by the indenture executed by the Langes with the foundling hospital. At least, such intention was never evidenced by any action of the parties in regard to the indenture prior to this suit.

Appellants' Point 1 presenting the issue hereinabove discussed is sustained and the judgment of the trial court is reversed and judgment rendered for appellants with the result that the estate of Henry Lange shall pass to The New Subiaco Abbey and to his surviving blood sisters as legally provided by his will duly filed for probate.

PITTS, Chief Justice (dissenting).

As a result of a careful examination of the record and briefs in this case, I feel impelled to respectfully dissent to the majority opinion. This is an action involving the rules of construction primarily of a written indenture or contract made by a third party for the benefit of an infant. On August 7, 1922, the New York Foundling Hospital, a corporation of the State of New York, as party of the first part, hereafter referred to as The Hospital, and Henry Lange and wife, Barbara Lange, both of Castro County, Texas, and both now deceased, as parties of the second part, hereafter referred to as the Langes, executed a written indenture or contract, witnessed by two witnesses, concerning the future interest of appellee, Martha Bridget Schulte, then a child one year of age known as Bridget Lynch, hereafter referred to as the child.

The Hospital had the legal care, custody, control and power to make disposition of the child and by the expressed terms of the indenture agreement transferred the care and custody of the child to the Langes under such provisions as made its relationships to the Langes the same as if it were their natural child. Under the terms of the agreement the child was obligated to live with and obey the Langes until she was 18 years of age, to be employed by them in and about their home and the affairs of the household under the instruction of the Langes and according to the child's power, will and ability so to do and to honestly and orderly demean herself properly toward the Langes. In consideration of such obligation on the part of the child, the Langes promised and obligated themselves to keep, treat, maintain, support, educate and discipline the child as though she were their natural child and to permit the child to inherit from them at death and succeed to such a share of their property as she would have received under the law of descent and distribution had she been their natural child, regardless of whether they died testate or intestate. However the Langes reserved an option to return the child to The Hospital any time before she became 18 years of age if they so desired and by so doing the terms of the contract

would have been nullified. But the Langes did not return the child but elected to keep her when they saw fit to legally adopt her on April 18, 1928, when she was about seven years old, which adoption, as I view the matter, did not contravene or violate any terms of the indenture agreement between the parties.

The material facts were not controverted and were stipulated by agreement of the parties. Such stipulated facts reveal that the child was accordingly delivered to the Langes and continuously lived in their home conducting herself as an affectionate, obedient daughter should do and performing the household services required of her, as provided for under the terms of the indenture or contract, until she married Ray Schulte on or about October 15, 1940, with the consent and approval of the Langes when she was 19 years of age; that Barbara Lange died on or about August 9, 1949, leaving a will duly executed on July 2, 1934, devising all of her property to her surviving husband, Henry Lange, who died thereafter on or about February 9, 1951, devising by will duly executed February 27, 1950, one-half section of land in fee simple title to appellant, The New Subiaco Abbey, a corporation of the State of Arkansas, provided the said corporation would pay $1,000 in cash within one year to each of the testator's sisters, namely: Elizabeth Lange, also known as Sister Xavier, O.S.B., and Mary Lange, also known as Sister Adeline, O.S.B., both of whom are appellants herein. The testator likewise devised and bequeathed the remainder of his estate to his said sisters, who reside in the State of Arkansas. His will further recited a previous gift made to appellee, Martha Bridget Schulte, and her husband as evidenced by a deed executed by him on January 11, 1950, conveying one-half section of land to her and her husband, Ray Schulte. The child was also given a $500 government bond as an additional gift. Neither of the Langes had been married before and no children were born to their marriage. The only child they ever had was appellee, their adopted child.

In her pleadings appellee, Martha Bridget Schulte, joined pro forma by her husband Ray Schulte, sought specific performance of the contract in question, a copy of which she attached thereto and made a part thereof. Appellants answered with a number of special exceptions and a general denial. They further alleged as defenses lack of a valid consideration, that the adoption of the child nullified any agreement the Langes may have made to devise their property to it, that the relinquishment of the child's custody for its enrichment was contrary to good morals and against public policy and that the previous gifts to appellee and her husband by Henry Lange fulfilled any obligations the Langes may have owed the child. The case was tried to the court without a jury on May 13, 1952, and the same was taken under advisement by the trial court until May 16, 1953, when judgment was rendered for appellee as stated in the majority opinion.

Appellants present three points of error consistent with their claims made in their pleadings previously herein referred to and have made a very able argument in support thereof. While the majority opinion disposes of the case by discussing only one point, I believe it will be necessary for me to discuss all three points because of my views here stated.

A large part of the agreement not previously herein mentioned concerned periodical reports to be made to The Hospital by the Langes, the right of visitation privileges of the child by Hospital representatives, the necessity of the Langes procuring the consent in writing of The Hospital before they could transfer the custody of the child to others and other provisions not here material. However, since a proper construction of the provisions contained in paragraph VIII of the agreement is very material, the same is being here considered without recopying the said paragraph, which is fully and satisfactorily set forth in the majority opinion.

It has been held that in order to give a proper construction of a written instru-

ment, the entire contents thereof should be considered together with the surrounding circumstances, in order to determine the intention of the parties *at the time it was executed* (and not by their acts and conduct, which may have reflected different intentions some years thereafter). The intention should be gathered, if possible, however, from the contents of the instrument itself. Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306. This court recently held that a written instrument, not alleged to be ambiguous, must be so construed as to carry out the primary intent of the parties, and the same must be considered as a whole and must be given its reasonable, natural and probable meaning from the language used without resorting to subtle or forced construction that seem inconsistent with the language therein used. Brown v. Brown, Tex.Civ.App., 245 S.W.2d 995 (writ refused).

In applying the rules of construction, it appears to me that paragraph VIII is composed of two long sentences, each expressing a complete thought within itself, not conditionally depending upon the other. The first sentence provides that if the child is not returned to The Hospital or is not legally adopted by the Langes, nevertheless, it will be deemed that the Langes have elected to keep it and treat and maintain it the same as if it were their own natural child according to the terms of the agreement. The Langes did not return the child but adopted it when it was about 7 years of age. Therefore, the Langes elected to keep the child when they adopted it. If the second sentence in paragraph VIII bears any relationship to the first sentence, it means that if the Langes elect to keep the child in any event, which they did, they will at their death unconditionally leave a child's share of their property to the child as governed by the laws of descent and distribution whether they should die testate or intestate. And the said sentence means the same thing if considered alone.

The indenture or contract can be logically divided into three essential parts: (1) the authority of the New York Hos-

pital to make disposition of the subject (the child) about which there is no question, and the placing of the child with the Langes by the New York Hospital through its officers who said in part we "do hereby place and indenture the said Bridget Lynch to the said parties of the second part, as their own child in every respect"; (2) the commitment and promises made in behalf of the child that it would "live with and be employed by the said parties of the second part in and about their house and household * * * according to her power, will and ability" so to do until she attains the age of 18 years. With reference to the promises or obligations the New York Hospital committed the child to perform, it was stipulated in part by the parties to this suit that "during the time she remained in the home of Henry Lange and wife Barbara Lange, Martha Bridget Lange complied with the terms of the written indenture or agreement in every respect, giving them the affection and obedience a daughter should do, performing the duties in and about the house and household, and the affairs thereof and according to her power, will and ability" so to do. Then there can be no question but what the child performed all of the requirements made of her by her legal agent or custodian, the New York Hospital, as party of the first part; (3) then the promises or covenants made by Henry Lange and wife Barbara Lange, parties of the second part, who obligated themselves to take, care for, discipline and educate the child and treat her as their natural child until she was 18 years of age (unless they returned her in the meantime, which they did not do) and finally at their death, the said child would inherit and succeed to such share of their property as she would have received under the law of descent and distribution had she been their natural child, regardless of whether they died testate or intestate. The Langes kept faith with covenants and promises made by them except for the unconditional obligation they made, as part of the consideration of the indenture or contract, to the effect that the child at their death, should inherit and

succeed to such share of their property as a natural child should share under the law of descent and distribution whether they died testate or intestate. It is clear that according to this provision, if there had been other natural children of the Langes, such children would have shared equal rights with this child, in which event this child would not have been entitled to all of the Langes' estate, but appellee, being the only child of the Langes, she would have inherited and succeeded to all of the estate of the Langes at their death under the law of descent and distribution, in which event appellants as party defendants would not be entitled to any of the estate of Henry Lange, deceased.

We should bear in mind that the indenture or contract here involved is not one for adoption, although I think its terms leave the way clear for the Langes to adopt the child without violating or changing any of the material terms thereof. I find no expressed terms therein which release the Langes from their inheritance obligation if they should adopt the child. Neither do I find any language therein contained that would have the effect of doing such a thing by implication. It also appears to me that the consideration expressed in the indenture or contract is a promise made for a promise made, or reciprocal promises. Such can be a valuable consideration and it is not essential that both parties be obligated to perform at the same time. Mutuality of obligation is essential, however, and the promises must be certain and not vague or indefinite. 10 Tex.Jur. 129–130, Sec. 75, and authorities there cited. When it appears that a decedent has agreed to make a devise or bequest as compensation for services performed it must be shown that such services have been performed before right of recovery can be enforced in an action for such. A performance of the promise is a condition precedent to a right of recovery on such a claim of devise or bequest. 44 Tex.Jur. 668, Sec. 123, and authorities there cited. In the case at bar it is admitted by stipulation that appellee had performed her part of the agreement in every respect.

The New York Hospital was a long way from the home of the Langes in Castro County, Texas, but it took every precaution in placing this child in a proper home when it was but one year old. The language used in the agreement of indenture is not questioned and no ambiguity is charged. The child was obligated to live with and be "employed" by the Langes in conducting the affairs of the Lange household under their instructions and according to the child's power, will and ability to do so until she was 18 years of age. It would naturally be presumed that the Langes would not expect any valuable services out of the child as an infant but certainly they must have expected something of her when she grew older. The Langes loved the child so well they adopted her when she was seven years of age and cared well for her, but I fail to find that the adoption proceedings changed any of the material terms of the agreement. It is agreed by stipulation of the parties that the child complied with all of the promises and obligations made in the agreement on her behalf and it appears from the record that her promises were not vague or indefinite, although her duties under her employment were somewhat general to be performed under the direction of the Langes in their household.

This is an "agreement if indenture" and the word "indenture" is often used in the agreement. The child was placed by "indenture" and it was therein referred to as an "indentured child". In construing the terms of the agreement, we must give the language and the words therein used their ordinary and natural meaning and must presume that the parties who used such knew the meaning thereof. The New Century Dictionary defines the word "indenture" as meaning a contract or sealed agreement but specifically it means "a contract by which a person, as an apprentice, is bound to service". Webster's International Dictionary gives such word a similar definition. As one of its meanings and in fact the specific meaning there given is the same in substance as that given by the New Century Dictionary. There was no evidence showing the child to have been

"an apprentice" but the word "indenture" as used in the agreement seems to denote service of some sort required of the child.

This is not a proceeding in which the relationship was severed between a natural parent and his child. Neither is this a suit involving a contract to relinquish custody of a child for the sole purpose of enriching it in the future.

It seems the principal cases upon which appellants rely for recovery are: Legate v. Legate, 87 Tex. 248, 28 S.W. 281; Logan v. Lennix, 40 Tex.Civ.App. 62, 88 S.W. 364; Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; and Mulkey v. Allen, Tex.Com.App., 36 S.W.2d 198. In those cases natural parents transferred and relinquished their children to foster parents either by written or verbal agreement, usually to be adopted, as the only consideration for a promise to devise property to such children, provided any question of gift or inheritance is therein discussed. The case at bar is distinguishable from such cases in that the agreement here under consideration is not one of relinquishment involving the child's natural parents whose natural parental relationship to the child had already been severed by some means not here reflected by the record; in this action there is a consideration obligating the child to perform services, which she admittedly performed, and a situation in which the foster parents failed to perform in full according to the solemn covenants made in writing by them. The case most extensively quoted by appellants is Hooks v. Bridgewater, supra. In that case a 9 year old boy's only surviving parent (father) contracted verbally to relinquish custody and control of the child to a bachelor, who never married, in consideration of the bachelor caring for and finishing the rearing of the child as if it were his own child and making it his heir of all of his property at death. The court there held that such a verbal contract involving the transfer of land violated the statute of fraud and was therefore void. The court also said there was no contract there for services but merely an attempt to bargain away the child and it held that a parent should not be permitted to relinquish or barter or bargain away his child even for its enrichment and sever the sacred relation between parent and child and that to permit such to be done was contrary to public policy. In the case at bar a child was not "bartered" or "bargained" away in violation of a sacred relationship existing between a parent and child. On the contrary, a homeless child, who had already lost by some means not reflected by the record the sacred relationship between it and its natural parents, was given an opportunity by a written agreement, as a result of interested parties, to be reared in a good home where it fulfilled and complied with solemn promises made in its behalf to perform and render services as well as to behave and demean itself properly, for all of which it was to receive an inheritance from the foster parents. By reason of the agreement of indenture a helpless child was saved and given an opportunity to become a valuable citizen.

In the case of Cheney v. Coffey, 131 Tex. 212, 113 S.W.2d 162, 165, 114 S.W.2d 533, cited and relied on by appellants, two minor children were abandoned by parents and were later adjudged dependent children and verbally delivered by a court to foster parents who promised to rear and educate them and the father promised verbally to will his estate to them. The foster parents thereafter adopted the children after the natural mother returned and signed a transfer of parental authority. The foster parents were thereafter divorced and the children were awarded to their foster mother, soon after which their foster father died leaving both personal and real property. That case had many angles to it that clearly distinguish it from the case at bar. The court there held the statute of fraud was involved which foreclosed recovery and the actions of the lower courts were reversed and the cause remanded. However, the court there said:

"'* * * public policy is that principal of the law which holds that "no one" can lawfully do that which has a

tendency to be injurious to the public or against the public good; * * * In a judicial sense, public policy does not mean simply sound policy or good policy, but it means the policy of a state established for the public weal either by law, by courts, or by general consent.' 50 C.J. p. 858.

"[7–12] The following quotations sufficiently indicate our view of the principles of law controlling the present question:

" 'According to the substantially unanimous current of authority, a contract to adopt or to take a child as an heir, though made with a third person for the benefit of the child, is enforceable by the child.' 1 Am.Jur. p. 632."

With reference to the acts there established, the court further said:

" 'These acts, neither as a whole nor singly, violated any public policy of this state. * * * How could it be said that an attempt to save a helpless child violated any public policy, * * *.'"

So it was here. A child was saved under the affirmative established principles of public policy.

With reference to public policy and the sacred right of parties to execute a binding contract the court said in the case of Erikson v. Hawley, 56 App.D.C. 268, 12 F.2d 491, 494:

" ' "It must not be forgotten that we are not to extend arbitrarily those rules which say that a given contract is void, as being against public policy, because if there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore we have this paramount public policy to consider—that we are not likely to interfere with this freedom of contract." *That is but saying that sub-stantial justice and the obligation of contracts are entitled to superior consideration to the vague and indefinite notions of public policy, urged to avoid a contract for which the party has received full consideration. Such a defense always comes with a bad grace from a party to the contract who has received full consideration, and enjoyed the fruits of the contract that he alleges to have been made in contravention of law or principles of public policy.'* "

In so far as the record before us reveals, the Langes had a right to execute a valid contract whether it may seem to be the acts of normal people 30 years later or not. According to the rules of construction and the language used by the parties in the contract here under consideration, it appears to me to be a valid and binding contract that should be enforced by the courts of justice.

I do not believe appellee, Martha Bridget Schulte, waived any rights here asserted by her in her failure to contest the wills executed by her adopted parents or that she by reason thereof is estopped to make the claims here made. First, because appellants did not plead such and have not made such claims either here or in the trial court. Then the record does not reveal when either of the wills was admitted to probate. However, the record does reflect that an inventory and appraisement was sworn to, filed and approved by the probate court in the estate of Barbara Lange, deceased, on January 3, 1950, after her death on August 9, 1949, and that the same showed a community estate between her and Henry Lange of the value of $61,000. About a week after the approval of such inventory and appraisement Henry Lange by deed of conveyance executed on January 11, 1950, gave appellee and her husband a half section of land valued at $32,000 which, together with the $500 bond made payable to Henry Lange or Martha Bridget Schulte, made the total amount given appellee a little more than half the value of the community estate. There was no occasion for contesting the will of Barbara Lange when Henry Lange, in recognition of the child's rights under the terms of the agreement of indenture, gave to ap-

pellee even a little more than her mother's part of the community estate. Naturally appellee accepted it in compliance with the terms of the agreement in question.

Then the very next month thereafter and 28 years after the agreement of indenture had been executed for the benefit of the child, Henry Lange on February 27, 1950, executed his will leaving none of his property to appellee, although it is admitted that she had performed all of the requirements made of her under the terms of the contract in question. The record does not reflect when Henry Lange's will was admitted to probate, but it does reflect that the inventory and appraisement returned therein was sworn to and approved by the probate court on May 21, 1952, more than a year for some reason after Henry Lange died February 9, 1951. This suit was filed by appellee on May 5, 1952, some two weeks before the inventory and appraisement in the Henry Lange estate was sworn to and approved. It must be assumed therefore that this suit constitutes a contest of Henry Lange's will.

I do not believe the acts of Barbara Lange 12 years after the agreement of indenture was executed and the acts of Henry Lange 28 years thereafter would conclusively reveal their intentions at the time the agreement was executed. Neither do I believe Martha Bridget Schulte waived any of her rights or is to be estopped from asserting them here on any grounds reflected by the record herein.

Appellants contend that the gifts made to the child by Henry Lange during his lifetime fully complied with the obligation of the Langes. However, it is my opinion that the agreement of indenture obligated the Langes to leave a child's share of their property to it under the law of descent and distribution if they elected to keep it, whether they adopted it or not and whether they died testate or intestate. They elected to keep the child and adopted it. It being their only child, it was entitled to all of their property under the law of descent and distribution. If such be true a partial compliance of its terms by the Langes by giving the child and her husband only a part of their property did not fulfill their obligation to bestow upon her a child's part in accordance with the law of descent and distribution at their death. Henry Lange and his wife, Barbara Lange, both made such a solemn covenant. When Henry Lange, after receiving by will his wife's half of the community estate, gave the child a $500 government bond and deeded one-half section of land to it about five months after Barbara Lange died, leaving himself another half section of land and other personal property, he had given the child approximately only the foster mother's half of the community estate. According to the solemn covenant he had made, the child was entitled to the other half section of land and the rest of his estate when he died.

For the reasons stated it is my opinion that the trial court was justified in finding and concluding that the agreement of indenture contained a valuable and binding consideration; that the adoption proceedings did not nullify any part of the terms of the agreement with reference to inheritance; that the terms of the agreement were not contrary to good morals and did not violate public policy; that the previous gifts to the child of land and a government bond by Henry Lange did not fulfill the obligations of the Langes to the child under the indenture or contract; and that the agreement of indenture was a valid and binding obligation. Appellants' points to the contrary should, in my opinion, all be overruled and the judgment of the trial court should be affirmed.