

# The Attorney General of Texas

October 22, 1981

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Fred Wendorf, Ph.D., Chairman
Texas Antiquities Committee
P. O. Box 12276, Capitol Station
Austin, Texas   78711

Opinion No. MW-378

Re:  Contract for renovation
of Sam Houston Woodland Home
in Huntsville

Dear Mr. Wendorf:

The Sam Houston Woodland Home in Huntsville, Texas, is the subject of your opinion request. This home is situated on land administered by the Board of Regents of the Texas State University System. It is designated as a National Historic Landmark, is listed in the National Register of Historic Places, and is a Recorded Texas Historic Landmark.

On June 24, 1981, the Texas Antiquities Committee designated the Woodland Home as a State Archeological Landmark. We will assume that this designation was effective to confer "landmark" status upon the home. The Board of Regents is concerned about the effect of this designation upon a contract it entered into on May 23, 1980, for extensive renovation of the home. Much of the renovation work had been completed when the designation was made, but more remains to be done. Your question is whether the Board of Regents must obtain a permit from the Texas Antiquities Committee before this renovation work can be completed.

Sections 191.001, et seq., of the Natural Resources Code constitute the Antiquities Code of Texas. These provisions were enacted in 1977. Acts 1977, 65th Leg., ch. 871, at 2345. Formerly, they were contained in article 6145-9, V.T.C.S., enacted in 1969.

Several Antiquities Code provisions are relevant to your inquiry. Section 191.092 provides that:

> Other sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest, including those pertaining to prehistoric and historical American Indians or aboriginal campsites, dwellings, and habitation sites, their artifacts and implements of culture,

as well as archeological sites of every character that are located in, on, or under the surface of any land belonging to the State of Texas or to any county, city, or political subdivision of the state are state archeological landmarks and are the sole property of the State of Texas. (Emphasis added).

Prior to the effective date of Senate Bill No. 659, section 191.093 provided that:

Landmarks under Section 191.091 of this code are the sole property of the State of Texas and may not be taken, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the committee. (Emphasis added).

Section 191.094 provides in pertinent part that:

(a) Any site located on private land which is determined by majority vote of the committee to be of sufficient archeological, scientific, or historical significance to scientific study, interest, or public representation of the aboriginal or historical past of Texas may be designated a state archeological landmark by the committee.

Section 191.095 provides that:

All sites or items of archeological, scientific, or historical interest located on private land in the State of Texas in areas designated as landmarks, as provided in Section 191.094 of this code, and landmarks under Section 191.092 of this code, may not be taken, altered, damaged, destroyed, salvaged, or excavated without a permit from the committee or in violation of the terms of the permit. (Emphasis added).

Senate Bill No. 659 became effective on August 31, 1981. It amended section 191.093 by adding the following underlined language:

Landmarks under Section 191.091 or Section 191.092 of this code are the sole property of the State of Texas and may not be taken, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the committee. (Emphasis added).

Before reaching your question, we will address two threshold questions: (1) Prior to August 31, 1981, was the Texas Antiquities

Committee authorized to require that a permit be obtained before section 191.092 landmarks are altered?  (2) May the committee require that a permit be obtained if it has not formally designated an item listed in section 191.092 as a "state archeological landmark"?

Texas Antiquities Committee v. Dallas County Community College District, 554 S.W.2d 924 (Tex. 1977), is pertinent to this inquiry. There, the college district sought to set aside an order of the Antiquities Committee denying it a permit to demolish three buildings. The committee had never designated the buildings as state archeological landmarks.  Nevertheless, it argued that the college district had to obtain a permit before demolishing the buildings because they were listed in the National Register of Historic Sites and Buildings and were therefore of "historical interest" within section 6, article 6145-9, V.T.C.S.  That section then provided as follows:

> All... buildings... of historical... interest... located... on... lands belonging to the State of Texas or... any county, city, or political subdivision of the state are... State Archeological Landmarks and are the sole property of the State of Texas and all such sites or items located on private lands within the State of Texas in areas that have been designated as a 'State Archeological Landmark' as hereinafter provided, may not be taken, altered, damaged... without a permit from... the Antiquities Committee.

See §§191.092-191.095.

Speaking for four members of the court, Justice Pope held section 6 unconstitutional on its face and as applied in that case. With respect to the latter conclusion, he found no substantial evidence to support the committee's refusal to grant the permit. Justice Greenhill concurred, agreeing with the plurality on the substantial evidence point, but declining to reach the constitutional questions.  Justice Denton dissented.

The portion of Justice Pope's plurality opinion that concerns us is as follows:

> The Antiquities Committee has not designated any of the three buildings at issue as State Archeological Landmarks, but the Committee has denied the College District's request to demolish the buildings based upon the buildings' expedited inclusion in the National Register of Historic Sites and Buildings.  The Antiquities Code does not give the Antiquities Committee authority over buildings in the National Register; instead, the Code only gives the Committee authority over

> buildings which the Committee has designated as a
> State Archeological Landmark.  Since the Committee
> has   not   designated   the   buildings   as   State
> Archeological Landmarks, the College District does
> not   need   the   Committee's   permission   before
> demolishing the buildings.

554 S.W.2d at 926.  (Emphasis added).

The meaning of this statement is clear:  the Antiquities Committee has no jurisdiction over buildings which it has not designated as state archeological landmarks, and its permission is therefore not needed before such a building is altered.  The question concerns the legal significance of this statement.  Although neither Justice Greenhill nor Justice Denton challenged it in their opinions, it technically reflects the views of only four members of the court. Moreover, if the fact that the buildings were never designated as landmarks was dispositive of the question of whether a permit was needed to demolish them, the court need not have reached the constitutional questions.  It could have disposed of the case on that ground alone.

In our opinion, however, this statement resolves the question of when the Antiquities Committee acquires jurisdiction of buildings, sites, and other items.  First, the court of civil appeals relied on this statement in Board of Regents v. Walker County Historical Commission, 608 S.W.2d 252 (Tex. Civ. App. - Houston [14th Dist.] 1980, no writ), which involved the Woodland Home.  Second, it is the only reasonable construction of the Antiquities Code provisions.  One can hardly be expected to know that a particular item is a "landmark," and is therefore subject to the permit requirement, until the Antiquities Committee formally designates it as such.

The Woodland Home is a "building" located on land "belonging to the State of Texas or to any county, city, or political subdivision" within section 191.092.  For the foregoing reasons, we conclude that it became a "landmark" within the Antiquities Code on June 24, 1981.

We now consider whether, prior to August 31, 1981, the Antiquities Committee's permission was needed before section 191.092 landmarks could be altered.  Put another way, does Senate Bill No. 659 effect any change in the law in this area?  Before August 31, section 191.093 referred only to "landmarks under Section 191.091."  Section 191.095 provided, however, that:

> All   sites   or   items   of   archeological,
> scientific,   or   historical   interest   located   on
> private   land   in   the   State   of   Texas   in   areas
> designated as landmarks, as provided in Section
> 191.094 of this code, and landmarks under Section
> 191.092 of this code, may not be... altered...

without a permit from the committee.... (Emphasis
added).

This section was derived from section 6, article 6145-9, supra.
Section 6 was discussed in Attorney General Opinion H-250 (1974),
which observed that although the "peculiar wording" of the section
might suggest that the "taken, altered, damaged," etc., clause applied
only to landmarks on private lands, the legislature certainly must
have intended to protect landmarks on public land "with the same
vigor." Attorney General Opinion H-250 concluded as follows:

> In our opinion, then, §6 of the Antiquities Code
> requires that the permission of the Antiquities
> Committee be obtained in the form of a permit
> before any site of historical or archeological
> interest located on public lands can be altered,
> damaged, destroyed, etc. (Emphasis added).

In our opinion, the legislature merely ratified this conclusion
when it enacted section 191.095 in 1977. The wording of that
section--particularly its reference to section 191.092--clearly
indicates that all section 191.092 landmarks were intended to be
subject to the permit requirement. Senate Bill No. 659 does not enact
new law, therefore, but only clarifies existing law.

The Antiquities Committee, therefore, was obliged to require that
a permit be obtained prior to the alteration of a section 191.092
landmark even before Senate Bill No. 659 became effective. The
remaining question is whether the committee may now require the Board
of Regents to obtain a permit before further renovation work is
performed on the Woodland Home pursuant to the contract of May 23,
1980.

Section 191.093 now provides that section 191.092 landmarks "may
not be...altered...without a...permit from the committee." The law is
settled that unambiguous statutory language will be construed as
written. Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974). In our
opinion, a straightforward reading and application of this statute
compels the conclusion that once a building is designated as a "state
archeological landmark," it may not be altered without a permit from
the committee. We perceive no basis for concluding that the
legislature did not intend for the permit requirement to apply where,
as here, alterations were contracted for before a building is
designated a landmark. On the contrary, given the state's legitimate
interest in preserving the integrity of landmarks, we believe the
legislature fully intended the permit requirement to apply in such
instances.

It is suggested in an accompanying brief that to conclude that
the Board of Regents must obtain a permit before this renovation work
is completed is to raise constitutional questions under article I,
section 10 of the Federal Constitution and article I, section 16 of

the Texas Constitution, which prohibit laws impairing the obligation of contracts.  However, we are not here confronted with legislation which has that effect.  See, e.g., Texas State Board of Barber Examiners v. Beaumont Barber College, Inc., 454 S.W.2d 729 (Tex. 1970); Biddle v. Board of Adjustment, Village of Spring Valley, 316 S.W.2d 437 (Tex. Civ. App. - Houston 1958, writ ref'd n.r.e.); see also review of cases in Attorney General Letter Advisory No. 136 (1977).  As we have observed, even though section 191.093 has now been amended to include section 191.092 landmarks, section 191.095 has existed in its present form since 1977.  Accordingly, when the parties entered into the May 23, 1980, contract, the law then provided that section 191.092 landmarks may not be altered without a permit from the committee.  The parties must be presumed to have known that the Woodland Home could at any time be designated as a landmark, thus triggering the permit requirement.  See, e.g., Reid v. Gulf Oil Corporation, 323 S.W.2d 107 (Tex. Civ. App. - Beaumont 1959), affirmed, 337 S.W.2d 267 (Tex. 1960); Lange v. Schulte, 276 S.W.2d 889 (Tex. Civ. App. - Amarillo 1954, writ ref'd n.r.e.); 13 Tex. Jur. 2d Contracts §165 (parties to contract presumed to have known existing law and to have contracted with reference to it).  Our courts have held that the enforcement of legislation in effect when a contract is made does not impair the obligations created by the contract.  McKenna v. City of Galveston, 113 S.W.2d 606 (Tex. Civ. App. - Galveston 1938, writ dism'd); see also Romeike v. Houston Ind. School District, 368 S.W.2d 895 (Tex. Civ. App. - Waco 1963, no writ).

We therefore conclude that the Board of Regents must obtain a permit from the Texas Antiquities Committee before renovation work on the Woodland Home is completed, even though the work was contracted for before the home was designated a "landmark."

It must be emphasized, however, that the committee may not arbitrarily refuse to grant a permit or impose any requirements whatsoever as conditions precedent to the issuance of a permit.  Texas Antiquities Committee v. Dallas County Community College District, supra, demonstrates that the committee's decision will be tested under the substantial evidence rule.  In making its decision, for example, the committee certainly could not overlook the fact that, based upon a restoration study made by an architectural firm, the legislature appropriated funds for repairs and rehabilitation of the Woodland Home in 1979.  General Appropriations Act, Acts 1979, 66th Leg., ch. 843, art. IV, §1, at 2844.  In other words, the Woodland Home was designated a landmark after the legislature had placed its stamp of approval on the restoration project currently in progress.

## S U M M A R Y

The Board of Regents of the Texas State University System must obtain a permit from the Texas Antiquities Committee before completing the renovation work on the Sam Houston Woodland Home

in Huntsville which it contracted for in May, 1980.

Very truly yours,

MARK   WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Eva Loutzenhiser
Jim Moellinger